IN RE APPLICATION OF CARL W. ANDERSON FOR LIQUOR LICENSE.

AUGUSTE DECK, APPELLANT, v. CARL W. ANDERSON, APPELLEE.

FILED JANUARY 9, 1911.   No. 16,800.

1. **Intoxicating Liquors: PETITION FOR LICENSE: FREEHOLDERS.** Four signers upon a petition for saloon license had jointly purchased a lot in the principal business part of a small village for $500, had paid $250 in cash, and given notes for the remainder. When they purchased the lot they did not know that the party for whom they signed would be an applicant for license. *Held,* That they were freeholders and competent to sign as such.

2. ———: ———: QUALIFICATION OF PETITIONERS. The fact that purchasers of real estate knew that such purchase would qualify them to sign petition for saloon license, and that they desired to be so qualified, and did sign the petition for the applicant for license soon after obtaining their deed would not disqualify them as such petitioners, if they in fact purchased the real estate in good faith as an investment and the same was so held by them.

APPEAL from the district court for Wayne county: ANSON A. WELCH, JUDGE. *Affirmed.*

*Berry & Berry* and *A. R. Davis,* for appellant.

*H. E. Siman, contra.*

SEDGWICK, J.

Carl W. Anderson applied to the board of trustees of the village of Hoskins, of Wayne county, for saloon license. A remonstrance was filed, and upon hearing a license was granted by the board. The remonstrator appealed to the district court, where the action of the village board was affirmed, and appeal was taken to this court.

A transcript of the petition for license filed with the village board is duly certified in the record, and it shows the signatures of 32 petitioners. The remonstrator stated several grounds for refusing the license, some of which were waived upon the hearing, and the remaining objections to granting the license stated in the remonstrance are "because the petition filed by the said Carl W. Anderson, applicant, with the village clerk of said village is not signed by 30, or the requisite number of resident freeholders, as required by law," and "that Frank Phillips, Fred Buss, Glenn Green, Frank Hart, and E. H. Kruger, whose names appear on petition of applicant, are not *bona fide* freeholders."

The principal contention was whether the signers challenged in the remonstrance as not *bona fide* freeholders were in fact such freeholders. The evidence shows that Fred Buss, one of the petitioners whose qualifications were challenged, was a married man and has been living with his family on a tract of land embracing nearly a block in the said village for more than three years; that his father was the owner of the tract, and that a short time before he signed the petition his father gave him the tract of land on which he lived. There was a mistake in the deed first executed by his father, and afterwards another deed was made to correct the mistake, and was sent by his father to the proper office to be recorded. His

father testified as a witness that he gave the land to his son, and that he, the father, owned the remainder of the block upon which there was also a dwelling house. We have not noticed any evidence in the record as to the value of this property. If it has constituted the residence of the petitioner for more than three years, and there is no evidence to the contrary, it will be presumed to be of sufficient value, and there can be no doubt that this petitioner was fully qualified.

There is considerable evidence as to the qualifications of the four other petitioners who were challenged by the remonstrance. The hearing upon this application before the village board was begun on the 14th day of May, 1910. The precise time when this petition was signed by these petitioners does not appear. The evidence shows that these four petitioners, some time in the month of March, 1910, jointly purchased a business lot in the village. The lot was 25 feet in width by 150 feet in length. It was located next to the bank. Nearly all the other lots in the same block were occupied by buildings. The contract price of the lot was $500. They paid $250 of the purchase price at the time they procured their deed, which was dated on the 28th day of April, 1910. For the remaining $250 they gave notes. They made the contract for the lot with Mr. Kautz, who was acting for his wife, the owner of the lot. The deed was executed by Mrs. Kautz, her husband joining with her. They testified that they bought the lot for speculation and had made no use of it. They thought it would increase in value. One of them testified that they had never heard of Carl Anderson's application for saloon license when they bought the lot, and that they did not buy it for the purpose of qualifying themselves as petitioners. One witness, the applicant for license, testified that the lot in question was worth $700 at the time of said purchase. The foregoing facts in regard to the purchase of the lot do not seem to be controverted. Several circumstances are urged as showing that the purchase of this lot was not in good

faith, but was solely for the purpose of qualifying them as petitioners.  Mr. Kautz, from whom they bought it, was conducting a saloon, and one of the four purchasers was employed by him in the saloon and paid his proportion of the purchase price with $5 in cash, the remainder being allowed upon his wages.  They were not dealers in real estate, and do not appear to have purchased any other real estate in Haskins.  They had not paid the notes at the time of the hearing.  They signed a petition for saloon license for another party at about the time they purchased the lot.  One of the four paid $75 of the first payment, a part of that payment being for another of the four who was not able to pay the full amount.  The remonstrator called no witnesses.

We must conclude that the value of the lot was at least $500, and that the uncontradicted evidence produced by the applicant shows that these four petitioners were resident freeholders, as required by the statute.  In *Lambert v. Stevens*, 29 Neb. 283, it is held that, when the remonstrance denies "that certain named petitioners are resident freeholders," the burden of proof is upon the applicant to prove that they are qualified petitioners. This evidence shows that these parties were the owners of valuable real estate in the village before it was known that this applicant would ask for license.  It may perhaps be inferred from the whole evidence that these petitioners appreciated the privileges enjoyed by freholders in general, and that they had this in mind, which formed one of the inducements to purchase this property.  They knew that none but freeholders were qualified as petitioners for saloon license, and that if they purchased this real estate they could exercise that privilege, which otherwise they could not do.  Resident owners of real estate who refuse to sign such petitions are counted against granting saloon license, and those interested either way in such matters might desire for that reason to be owners of real estate.  This desire may have been, and probably was, one inducement to these parties to purchase this

property; but that fact would not necessarily disqualify them as freeholders under the statute, if the purchase was made in good faith as a *bona fide* investment and the property was so held.

It was stipulated that 19 persons, specifically named, and stated in the stipulation to be signers on the petition, were duly qualified. Two of the names in this stipulation are not found in exactly the same spelling upon the petition as appears from the transcript in the record. This may result from inaccuracy in copying the names from the original papers. The stipulation names 19 persons specifically, and states that the persons so named are signers on the petition; and as 17 of these are identical with the names on the petition, and there are two other names on the petition somewhat similar in spelling to the remaining two found in the stipulation, and there is no other evidence in the record as to their qualifications, it must be presumed that these two signers of the petition were intended in the stipulation and were duly qualified. Seven others, August Buss, August Ruhlow, Charles Green, Clara Wetzlich, Mrs. G. B. Miller, H. C. (or J. I.) Green, and Elena Buss, were shown without doubt to be resident freeholders, so that with these five that were specially challenged there were at least 31 qualified signers upon the petition. This was sufficient under the law, and it is not necessary to discuss or consider the testimony offered tending to show that there were less than 60 resident freeholders in the village.

The judgment of the district court is

AFFIRMED.

REESE, C. J., not sitting.